**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

AMELIA NELSON,
ELMER NELSON and
KIMBERLEY NELSON,

Plaintiffs,

v.

LANCASTER INDEPENDENT SCHOOL DISTRICT NO. 356; KENDALL HUNTER, individually and in his capacity as Chairman of the Lancaster School Board; and KATHY HUNTER, individually and in her capacity as employee of the Lancaster Independent School District No. 356,

Defendants.

Civil No. 00-2079 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' SUMMARY JUDGMENT MOTIONS**

---

Gary M. Hazelton, HAZELTON & RODGERS, 1421 Bemidji Avenue North, Suite 2, Bemidji, MN, 56601, for plaintiffs.

Melinda M. Sanders and Michael Thomas Feichtinger, QUINLIVAN & HUGHES, 600 Wells Fargo Bank Building, 400 First Street South, P.O. Box 1008, St. Cloud, MN, 56302, for defendant Lancaster Independent School District No. 356.

Patrick Mark Krueger, BORDEN, STEINBAUER & KRUEGER, P.O. Box 411, Brainerd, MN, 56401, for defendants Kendall and Kathy Hunter.

Plaintiffs Amelia Nelson and her parents, Elmer and Kimberley Nelson, bring this action against the Lancaster Independent School District No. 356 and individual school

FILED FEB 15 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

employees, alleging claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, 42 U.S.C. § 1983, negligent hiring, negligent retention, common law battery and trespass.

This matter is before the Court on the motions of defendant Lancaster Independent School District No. 356 and Kendall[1] and Kathy Hunter for summary judgment. For the reasons that follow, the Court grants in part and denies in part the school district's summary judgment motion. The Court dismisses plaintiffs' Title IX, § 1983 and negligent hiring claims against the school district but finds that sufficient issues of material fact remain on plaintiffs' negligent retention claim. The Court grants defendants Kendall and Kathy Hunter's motion for summary judgment in its entirety.

## BACKGROUND

The Lancaster Independent School District No. 356 (the "school district") employed defendant Kevin Hunter as a school bus driver from the fall of 1993 until approximately October 1997, when he resigned from his position and accepted employment with a bus plant. Kevin's parents, Kendall and Kathy Hunter, are also employed by the school district. Defendant Kendall Hunter has been a member of the Lancaster School Board for the past fifteen or sixteen years, and has chaired the School Board for the last eight years. Defendant Kathy Hunter has been employed by the school district since approximately 1985 as a bus driver.

[1] Although some of the pleadings, including the complaint, refer to Mr. Hunter as Kenneth Hunter, the Court confirmed at oral argument that Mr. Hunter's first name is Kendall, not Kenneth.

At the beginning of the 1996-97 school year, Kevin began driving Amelia Nelson's bus route. This was Amelia's ninth grade school year. She was fourteen years old at the time. In November 1996, Kevin began making advances toward Amelia and within a week or so, he began calling her at her home. In a telephone conversation over the Christmas break, Kevin told Amelia that he had feelings for her and wanted her to be his girlfriend. At that time Amelia did not respond to his advance, but after another few phone conversations, they arranged to see each other. Amelia told her parents that she was spending the night at Kendra Hunter's house. Kendra is Kevin's younger sister. Amelia stayed overnight at Kevin's house, where he was alone in the house, and they engaged in some physical contact, including kissing.

In January 1997, Amelia and Kevin arranged to spend another night together. This time, they went to Kevin's parents' cabin where they engaged in sexual intercourse for the first time. Their relationship continued for the next year and half, during which time Kevin and Amelia engaged in sexual relations on a regular basis. On a number of occasions, Kevin would sneak out of his house in the middle of the night and drive out to the highway near Amelia's house. Amelia would walk out to the highway, get in his car, and they would drive back to Kevin's home and sneak into his bedroom. They also engaged in sexual relations after school on various occasions, including in the school van.

On other occasions, they had sexual intercourse in Kevin's vehicle or his parents' vehicle at the driveway of a "summer home" that was approximately one mile from Amelia's house. They also had sexual relations in the Hunters' barn in the middle of the

night as well as at Amelia's house. Kevin would sneak into the house through her bedroom window in the middle of the night.

Kevin and Amelia generally made arrangements to meet with one another over the telephone. It was a long-distance call between the Hunter and Nelson homes. Sometime soon after Kevin began calling Amelia, Kathy Hunter asked Kevin about the long-distance telephone bill and the unusual number of calls to Amelia's house. According to Kathy Hunter, Kevin assured his mother that he and Amelia were just friends and that Amelia would call him because she needed someone to talk to. However, Amelia testified that Kevin told her that his mother questioned him about the phone bill and that he told her about their relationship. Amelia also claims that Kathy Hunter found jewelry, notes and condoms in the Hunter home that would lead her to know of their relationship.

In March 1997, Amelia was taken to the emergency room by ambulance after her parents found that she had consumed a quarter of a bottle of scotch. She was then referred for counseling with Dr. Patrick Goodman for signs of depression. She was diagnosed with major depression and prescribed Zoloft. Shortly thereafter, Amelia's mother, Kimberley Nelson, met with Principal Brad Homstad concerning the drinking incident. During the course of this conversation, Kimberley Nelson told Homstad that Kevin Hunter had been calling Amelia all the time. According to Nelson, Homstad "just about came out of his chair" in response to this information and said "Kim, he is a 25-year-old-man." Kimberley Nelson Depo. at 125-26. Homstad testified that he does not recall Kimberley Nelson ever telling him that Kevin Hunter had been calling Amelia and

states that had she told him this, he would have consulted with the superintendent and taken appropriate action.

On May 8, 1998, Amelia was involved in a one-vehicle automobile accident. According to Amelia, she lost control of the car while "goofing around." Kevin visited Amelia in the hospital with the permission of Amelia's parents. Amelia and Kevin broke off their relationship on Labor Day 1998 after both parties agreed it was not working out. Shortly thereafter, Amelia told her mother about her relationship with Kevin. Amelia's parents then contacted Dr. Goodman. Kevin Hunter was later charged with fifteen counts of criminal sexual conduct after a concerned citizen contacted the Kittson County Sheriff's Department. Kevin Hunter ultimately pled guilty to amended counts one through five. His twenty-three month prison sentence was stayed and he was placed on supervised probation for a period not to exceed fifteen years with certain conditions.

Thereafter, Amelia and her parents commenced this civil action, alleging that Kevin, his parents, and the Lancaster school district knew of the relationship and failed to take timely and appropriate action to avoid the sexual abuse. According to the complaint and subsequent discovery, Amelia alleges that Kathy Hunter knew that Amelia and Kevin were having a sexual relationship early into the relationship. To support this allegation, Amelia relies on her testimony that Kevin told her that he told his mother of their relationship. Amelia also claims that Kathy Hunter found jewelry, notes and condoms in the Hunter home that would lead her to know of the relationship. Amelia also claims that Kevin told her at one point that his mother approached Kevin and told him that "she

knew what he was doing with Amelia Nelson." Kevin's sister also approached Amelia and told her that she knew what she was doing with her brother.

Plaintiffs also allege that several school officials, namely, Bill Yonke, Bruce Sandahl, and Bradley Homstad, had actual or constructive knowledge of Amelia and Kevin's sexual relationship. Bill Yonke ("Yonke") is an eleven-year employee for the school district and has worked as both a bus driver and a custodian. Plaintiffs allege that Yonke could have knowledge of the relationship because one day, while sitting in the school van waiting for Yonke's children to come outside the house, Kevin kissed Amelia. Amelia admits, however, that she does not know if anyone in the Yonke residence would have seen Kevin kiss her on that occasion. Amelia also alleges that Yonke might have known something about her relationship with Kevin because his daughter, Tina, rode the school van and may have witnessed or noticed something happening between Kevin and Amelia. Plaintiffs also rely on the fact that in January 1997, Yonke witnessed and reported that Kevin Hunter picked up another Lancaster student, Nancy Lupien, in his personal vehicle when students were being let out to attend a basketball game.

Bruce Sandahl ("Sandahl") is a teacher with the school district and was Amelia's driving instructor during the summer of 1997. To support her allegation that Sandahl knew of their relationship, Amelia relies on an incident during that summer in which Amelia was caught lying about where she was spending the night. Amelia had arranged to spend the night at Kevin's house but told her parents she was spending the night at Lindsey's house. That night, Sandahl called the Nelson home to tell Amelia that her driver's training appointment the following morning would be at 6:30 a.m. When

Kimberley Nelson tried to relay this message to Amelia at Lindsey's, she discovered that Amelia was not there. Amelia believes that after finding this out, her mother called Sandahl and told him she was not where she was supposed to be and asked him if he knew where she was.

Bradley Homstad ("Homstad") is the school district's principal. Plaintiffs allege that Homstad knew or should have known of the sexual relationship because of the previously discussed conversation he had with Kimberley Nelson shortly after the relationship with Kevin began. Plaintiffs also rely on Homstad's knowledge of Kevin Hunter's relationships with other young women to support their claim. Specifically, Homstad knew about the Kevin Hunter/Nancy Lupien incident in which Nancy violated the school's transportation policy by driving in Kevin's vehicle to the basketball game rather than the school bus. Homstad met with both Lupien and Kevin Hunter about the incident. Plaintiffs also allege that Homstad and other school officials should have been suspicious of a relationship between Kevin and Amelia because of a brief engagement Kevin Hunter had with Amy Schmalz, a girl five years Kevin's junior and whom Kevin dated for four years, including when Schmalz was under eighteen.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Defendant Lancaster School District's Motion for Summary Judgment

### A. Title IX Claim

In Count I of the complaint, plaintiffs allege that the school district violated Amelia Nelson's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"). The school district argues that summary judgment is

appropriate because none of the school officials that plaintiffs have identified had actual knowledge of any sexual relationship between Amelia Nelson and Kevin Hunter.

Title IX provides, in relevant part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In *Cannon v. University of Chicago*, 441 U.S. 677 (1979), the Supreme Court recognized an implied private right of action under Title IX. Thereafter, the Supreme Court held that monetary damages are available in an action brought to enforce Title IX. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 76 (1992).

In *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274 (1998), the Supreme Court defined the contours of a school district's liability in the context of teacher-student sexual harassment. In *Gebser*, the Court rejected theories of liability premised upon either *respondeat superior* or constructive notice. *Id.* at 285 ("[W]e conclude that it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice *i.e.* without actual notice to a school district official.").

Instead, the Court concluded that damages may not be recovered in an implied private action under Title IX "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the [employee] misconduct." *Id.* at 277. "The scope of Title IX liability is purposely limited in order to eliminate any 'risk that the recipient

would be liable in damages not for its own official decision but instead for its employees' independent action.'" *Shrum v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) (quoting *Gebser*, 524 U.S. at 290-91).

In this case, plaintiffs allege that the following school employees had knowledge of Amelia's sexual relationship with Kevin Hunter: Kendall Hunter, Kathy Hunter, Bradley Homstad, Bruce Sandahl and Bill Yonke. The school district argues that none of these individuals had the requisite knowledge required under Title IX to bind the school district and moreover, many of the above-named individuals are not "appropriate persons" under the statute.

Title IX creates liability for a school district only if "appropriate persons" with actual knowledge are deliberately indifferent to the rights of the victim. In *Gebser*, the Supreme Court held that "an 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." 524 U.S. at 290. It is clear that Kathy Hunter, Bruce Sandahl and Bill Yonke do not satisfy this requirement. Neither Kathy Hunter, who works as a bus driver for the school district, Bruce Sandahl, who is employed as a teacher and driving instructor at the school, and Bill Yonke, who works as a bus driver and custodian, have the requisite authority to qualify as an "appropriate person" as defined above. In cases since *Gebser*, courts have strictly interpreted this element, requiring that the official in question be capable of terminating or suspending the individual. *Baynard v. Lawson*, 112 F. Supp. 2d 524, 533-34 (E.D. Va. 2000) (granting school district's motion for judgment as a matter of law and overturning jury verdict on the basis that the school principal was

not an "appropriate person" under § 1682 because Virginia state law did not authorize her to transfer or suspend teachers).

Although Kendall Hunter, the School Board Chairman, and Bradley Homstad, the school principal, might qualify as "appropriate persons" under Title IX, there is insufficient evidence in the record that either individual had **actual** knowledge of the sexual relationship. The record is devoid of any evidence that Kendall Hunter had actual knowledge of the relationship prior to Kevin's arrest. Kendall Hunter denies having any such knowledge and affirmatively states that he did not become aware of the relationship until criminal charges were brought against his son. Kevin Hunter testified that he had no reason to believe that his father knew of the relationship and Amelia, Elmer and Kimberley Nelson all testified that they have no information that Kendall Hunter was aware of a sexual relationship between Amelia and Kevin.[2] Nonetheless, plaintiffs argue that Kendall Hunter had knowledge of the sexual relationship between Amelia and Kevin through his wife, Kathy Hunter. Specifically, plaintiffs argue that because there is

---

[2] The deposition testimony of Amelia Nelson provides:

> Q: So far you have identified nothing, and if I am wrong, I want you to correct me obviously, by which you know that Kendall Hunter, Kevin's father, was aware of a sexual relationship between you and Kevin, am I correct?
>
> A: Yes.
>
> Q: Do you have any information of any kind to indicate that Kendall Hunter was or may have been aware of the sexual relationship between you and his son, Kevin?
>
> A: No.

Amelia Nelson Depo. at 386.

evidence in the record that Kathy Hunter was aware of the relationship and that Kathy and Kendall had an open relationship with each other, there is a compelling inference that Kathy told Kendall about the relationship. Plaintiffs' reliance on such conjectural evidence is plainly insufficient to satisfy the strict notice standards of § 1983. *Cf. Gebser,* 524 U.S. at 291 (parent complaints to high school principal insufficient to alert the principal to the possibility that the teacher was involved in a sexual relationship with a student); *Shrum,* 249 F.3d at 782 (school district that had conducted an investigation and was privy to a police investigation did not have "actual knowledge" of a teacher's sexual misconduct because the investigations were inconclusive).

As for principal Homstad, although he may have been told that Kevin was talking on the telephone with Amelia, this information does not amount to actual knowledge that they were engaged in a sexual relationship. *P.H. v. School Dist. of Kansas City,* 265 F.3d 653, 662-63 (8th Cir. 2001) (teacher complaints about student's tardiness and absences from class and general complaints about teacher spending too much time with the student insufficient to establish that school district had actual knowledge of sexual abuse). For these reasons, plaintiffs' Title IX claim against the school district is dismissed with prejudice.

**B. § 1983 Claim**

In Count II of the complaint, plaintiffs allege that the school district, through the policy making acts of Kendall Hunter in his capacity as Chairman and member of the Lancaster School Board, was deliberately indifferent to Amelia's constitutional right to

be free from sexual assaults by school employees. Plaintiffs base this count on 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To prevail under § 1983, plaintiffs must prove: "1) a violation of a constitutional right; 2) committed by a state actor; 3) who acted with the requisite culpability and causation to violate the constitutional right." *Shrum v. Kluck*, 249 F.3d, 773, 777 (8th Cir. 2001) (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997)). The school district concedes that plaintiffs have asserted a violation of a constitutional right. In their complaint, plaintiffs claim that the school district violated Amelia's Fourteenth Amendment liberty interests, including the freedom of bodily integrity. As the Eighth Circuit in *Kluck* explained: "It is well settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in a public school from sexual abuse." *Id.* at 778. Plaintiffs thus satisfy this element of their claim.

However, to create liability for the school district under § 1983, plaintiff must also show that the person who allegedly committed the alleged deprivation was acting under color of state law. As explained in *Kluck,* "a school district may be accountable for the unconstitutional acts of its employees if a constitutional deprivation results from either (1) implementation or execution of an unconstitutional policy or custom by school officials or employees; or (2) in the event of a substantive due process violation, an

executive action by a school official." *Id.* In this case, plaintiffs allege that Kendall Hunter failed to act on his knowledge of a sexual relationship between his son and Amelia and that this failure to act constitutes a policy decision by the School Board. However, as explained above, the record does not contain any credible evidence that Kendall Hunter had knowledge of a relationship between Kevin and Amelia. Moreover, even if Kendall Hunter had acquired such knowledge, school board policies clearly do not provide that one person, even the School Board Chairperson, can bind the district absent a majority vote by the Board.

Plaintiffs also fail to establish that the school district acted "'with the requisite degree of culpability' and that there was 'a direct causal link between the school district's action and the deprivation of federal rights.'" *Kluck*, 294 F.3d at 778 (quoting *Brown*, 520 U.S. at 404). As the Supreme Court has made clear, "where a plaintiff claims that the school district has not directly inflicted an injury but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the school district is not held liable solely for the actions of its employees." *Brown*, 502 U.S. at 405. "The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into *respondeat superior* liability, an intent not contemplated by § 1983." *Kluck*, 249 F.3d at 778. Furthermore, where, as here, a substantive due process violation is alleged to occur as a result of abusive executive action, a remedy is only recognized under § 1983 when the behavior at issue "shocks the conscience." *Id.* at 779. The evidence presented in this case falls well short of these standards. While principal Homstad's failure to investigate after learning that Kevin was

calling Amelia may be considered negligent, it was not conduct that shocks the conscience. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (same). Accordingly, for all the reasons set forth above, plaintiffs' § 1983 claim against the school district fails as a matter of law.

### C. Negligent Retention

The final count against the school district is that it negligently hired and negligently retained Kevin Hunter as a school bus driver for the district.[3] Under Minnesota law, a claim of negligent retention arises when, "'during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge or reassignment.'" *Yunker v. Honeywell*, 496 N.W.2d 419, 423 (Minn. Ct. App. 1993) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438-39 (Fla. Dist. Ct. App. 1986)). "Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." *Bruchas v. Preventative Care Inc.*, 553

[3] In their opposition brief, plaintiffs concede that they cannot survive summary judgment on their negligent hiring claim. Accordingly, this claim is dismissed with prejudice.

N.W.2d 440, 442-43 (Minn. Ct. App. 1996). In Minnesota, negligent retention claims require a threat of, or actual, physical injury. *Id.* at 443.

Defendants argue that plaintiffs' negligent retention claim fails for the same reasons plaintiffs' Title IX and § 1983 claim fail—none of the identified school officials had sufficient knowledge that Kevin posed a threat to students, including Amelia. The Court disagrees. At the outset, it is important to note that the scienter requirement to support a negligent retention claim is lower than either of the claims discussed above. The question here is whether principal Homstad "should have known" that Kevin posed a threat to others based on 1) his conversation with Kimberley Nelson informing him that Kevin was calling Amelia all the time; 2) the Nancy Lupien incident; and 3) the inferences that can be drawn from Kevin's brief engagement to Amy Schmalz. While the evidence is perhaps not overwhelming, the Court believes there is sufficient evidence to allow this claim to go forward. The Court is particularly troubled by the conversation between Homstad and Kimberley Nelson shortly after the relationship began, in which Nelson informed Homstad that Kevin had been calling Amelia.[4] This comment is sufficiently unusual to have triggered further inquiry on Homstad's part and a plausible inference could be sustained that had Homstad conducted further investigation, he would have uncovered the full extent of the relationship. *See Grozdanich v. Leisure Hills Health Ctr. Inc.*, 25 F. Supp. 2d 953, 983-84 (D. Minn. 1998) (former employer's comment that employee "had trouble dealing with some employee issues" sufficient to

[4] The Court recognizes that Homstad denies that Kimberley Nelson ever told him this information. However, that is a factual issue for the jury to resolve. For purposes of this motion, the Court must accept as true Kimberley Nelson's version of events.

trigger need to conduct further investigation). Accordingly, material issues of fact preclude summary judgment on this claim.

## III. Defendants Kendall and Kathy Hunter's Motion for Summary Judgment

Defendants Kendall and Kathy Hunter also move for summary judgment on the basis that plaintiffs have failed as a matter of law to establish a claim of individual liability under § 1983. With respect to Kendall Hunter, defendants argue that summary judgment is appropriate because there is no evidence that he had knowledge of a pattern of unconstitutional acts against Amelia Nelson. Kathy Hunter argues that the § 1983 claim against her must be dismissed because it is based on a violation of state law which does not support a cause of action under § 1983.

### A. § 1983 Claim Against Kendall Hunter

In Count IV of the complaint, plaintiffs allege that Kendall Hunter knew about the sexual abuse of Amelia Nelson by his son Kevin Hunter; that Kendall Hunter was in a position of authority with the school district to stop the sexual abuse of Amelia; that Kendall Hunter was deliberately indifferent to the sexual abuse of Amelia and that such deliberate indifference was a direct and proximate result of the sexual abuse Amelia suffered at the hands of Kevin Hunter.

Individual defendants can be subject to personal liability under § 1983 if the plaintiff proves that the individual: 1) received notice of a pattern of unconstitutional acts; 2) demonstrated deliberate indifferent to or tacit authorization of the offensive acts; 3) failed to take sufficient remedial action; and 4) such failure proximately caused injury

to another. *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000); *Jane Doe "A" v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990); *Boldthen v. Independent School Dist. No. 2397*, 865 F. Supp. 1330, 1338 (D. Min. 1994).

As discussed above, there is no evidence that Kendall Hunter had knowledge of any kind of relationship between Kevin and Amelia prior to Kevin's arrest, much less that he had notice of "a pattern of unconstitutional acts." The Court also reiterates that plaintiffs' reliance on the quite speculative inference that his wife would have told him of the relationship is insufficient to confer actual knowledge. Indeed, the Eighth Circuit has granted summary judgment to individual defendants under § 1983 on much stronger evidence than is present here. *E.g., Jane Doe A.*, 901 F.2d 642, 646 (8th Cir. 1990). Accordingly, the Court grants defendant Kendall Hunter's motion for summary judgment.

**B. § 1983 Claim Against Kathy Hunter**

Finally, plaintiffs allege that Kathy Hunter had actual knowledge of the sexual relationship between Kevin and Amelia and had a statutory duty under Minn. Stat. § 626.556 to report any suspected sexual abuse of minors by persons in a position of authority. Plaintiffs' § 1983 claim against Kathy Hunter fails because it is premised upon an allegation that she violated state law. It is well-settled that violations of state law do not state a claim under 42 U.S.C. § 1983. *Ebmeier v. Stump,* 70 F.3d 1012, 1013 (8th Cir. 1995); *Doe v. Gooden,* 214 F.3d 952, 955 (8th Cir. 2000). Therefore, even assuming that Kathy Hunter had knowledge of the sexual relationship and had a statutory duty to report, her failure to comply with state statutory law does not amount to "unconstitutional

misconduct" as required to state a claim under § 1983. The Eighth Circuit decision of *Doe v. Gooden* is directly on point. 214 F.3d at 955 ("We note initially that the failure of the [defendants] to report the suspected abuse, as required by the Arkansas state statute, does not amount to 'unconstitutional misconduct'" sufficient to sustain a claim under § 1983). Accordingly, dismissal of plaintiffs' § 1983 claim against Kathy Hunter is warranted.

**ORDER**

Based on the submissions of the parties, the arguments of counsel, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The motion by defendant Lancaster Independent School District No. 356 for Summary Judgment [Docket No. 26] is **GRANTED in part and denied in part.** The motion is **GRANTED** with respect to plaintiffs' claims under Title IX (Count I), 42 U.S.C. § 1983 (Count II) and that portion of Count III alleging negligent hiring. Accordingly, Counts I, II and that portion of Count III of plaintiffs' complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**. Defendant's motion is **DENIED** with respect to plaintiffs' negligent retention claim alleged in Count III.

2. The motion by defendants Kendall and Kathy Hunter for Summary Judgment [Docket No. 30] is **GRANTED.** Accordingly, Counts IV and V of plaintiffs' complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**.

DATED: February 15, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge